# Exhibit A

| SR         Summons | CIVIL DOCKET NO. 2584CV03594 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Healthcare Justice Coalition, LLC, Plaintiff(s) vs. Aetna Health Inc., Defendant(s) | | John E. Powers III  Clerk of Courts Suffolk  County COURT NAME & ADDRESS: Suffolk Superior Civil Court Three Pemberton Square Boston, MA. 02108 |

THIS SUMMONS IS DIRECTED TO **Aetna Health Inc.,** (Defendant's name)

You are being sued. The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the **Suffolk Superior** Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. If you need more time to respond, you may request an extension of time in writing from the Court.

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your signed original response with the Clerk's Office for Civil Business, **Suffolk Superior** Court **3 Pemberton Square, Boston, MA 02108** (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

b) Delivering or mailing a copy of your response to the Plaintiff's attorney/Plaintiff at the following address:
**Pollack Solomon Duffy LLP**
**31 St. James Avenue, Suite 830, Boston, MA 02116**

**3. What to include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Court no more than 10 days after sending your Answer.

**3. (cont.)** Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure.** If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required information on All Filings.**

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. __Michael D. Ricciuti__, Chief Justice on _____, 20____. (Seal)

Clerk _____

Note: The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

## PROOF OF SERVICE OF PROCESS

I hereby certify that on __01/27/2026__, I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

In hand to Rick McFeeters, Office Support Specialist as authorized to accept service on the Commissioner of Insurance at the Massachusetts Division of Insurance Legal Dept.,

One Federal Street, Suite 700 Boston, MA 02110

Dated: 01/28/2026          Signature: _____

**N.B. TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: 01/27/2026

rev. 1/2023

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                                                SUPERIOR COURT

HEALTHCARE JUSTICE COALITION,
LLC,

    Plaintiff,

v.

                                           Civil Action No.:

AETNA HEALTH INC.,

    Defendants.

_____/

# COMPLAINT

Plaintiff Healthcare Justice Coalition, LLC ("HJC"), by its counsel, as and for its Complaint against defendant Aetna Health Inc. ("Aetna"), states and alleges as follows:

## Preliminary Statement

1. HJC brings this action as the ultimate assignee of claims of Lakes/National Emergency Physicians Inc. (the "ER Group") against Aetna to recover damages caused by Aetna's significant illegal underpayments to the ER Group for out-of-network emergency medical services provided by the ER Group's emergency medicine clinical providers to Aetna's insureds at Holyoke Medical Center in Massachusetts (the "Hospital") who are covered by various types of commercial health care benefits plans and policies of insurance that are provided and/or administered by Aetna, including fully insured health maintenance organization ("HMO") plans.

2. In violation of Massachusetts law, including Massachusetts common law, Mass. Gen. Laws c. 176G, § 5(f) and 93A, Aetna has deliberately and knowingly refused to pay to the ER Group the reasonable amounts charged for the cost of out-of-network emergency medical services rendered by the ER Group's physicians, nurse practitioners and physicians' assistants to Aetna's members at the Hospital.

3. During the relevant time period, the ER Group's clinicians treated more than two thousand Aetna members and accordingly billed Aetna for those emergency medical services. The ER Group's total billed charges for these claims are more than approximately $1.98 million, a number that reflects the fair and reasonable rates for the particular emergency services in the community where those services were provided. For each of the claims for emergency services at issue herein, Aetna approved the claims and paid them, albeit inadequately, to the ER Group. Accordingly, this case does not involve denials, partial denials or other coverage determinations under any of the Aetna members' plans, but merely whether the rate of Aetna's reimbursement for those approved and covered out-of-network services was adequate under Massachusetts law.

4. Aetna has reimbursed the ER Group for only a small fraction of the more than $1.98 million in fair market value of emergency medical services that Aetna was required to pay under Massachusetts law.

5. Aetna's pattern of dramatically underpaying ER Groups is in clear violation of applicable state laws, including Mass. Gen. Laws c. 176G, § 5(f), and Massachusetts common law, and has caused ER Group to sustain substantial damages.

**Parties**

6. Plaintiff HJC is a Delaware limited liability company with its principal place of business in New York. HJC is a wholly owned subsidiary of eCure, LLC ("eCure"). eCure is the purchaser and assignee of claims from the ER Group pursuant to a Purchase and Assignment Agreement dated August 1, 2023, which is incorporated by reference herein. eCure has assigned its rights to these claims to HJC on August 28, 2025 pursuant to an Assignment and Assumption Agreement effective December 16, 2025.

2

7.      eCure is a Delaware limited liability company with its principal place of business in New York. eCure's members include an individual whose citizenship is in Massachusetts and Allia 770 Ventures, LLC, which is a Delaware limited liability company with its principal place of business in New York. Allia 770 Ventures has at least one individual member whose citizenship is in Connecticut.

8.      Defendant Aetna is a Pennsylvania corporation with its principal place of business in Connecticut that provides commercial health insurance plans to its members in Massachusetts. Aetna is a licensed health insurer under Massachusetts law with a Massachusetts registered agent CT Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110. Aetna administers claims for benefits for its subscribers and members under the terms of various health insurance plans, including HMO health benefit plans.

## Jurisdiction and Venue

9.      This Court has subject matter jurisdiction over this action pursuant to G.L. c. 212, § 3, because the claims involve amounts in dispute in excess of $50,000.00.

10.      This Court has jurisdiction over Aetna because: (i) Plaintiff's cause of action arises out of Defendant's transaction of business in this Commonwealth; (ii) Defendant caused tortious injury by an act or omission in this Commonwealth; (iii) Defendant caused tortious injury in this Commonwealth by an act or omission outside this commonwealth while regularly doing and/or soliciting business, engaging in a persistent course of conduct, and/or deriving substantial revenue from services rendered in this Commonwealth; (iv) Defendant contracted to insure person, property or risk located within Massachusetts at the time of contracting; and (v) Defendant is a licensed Massachusetts insurance company.

3

11.    Venue is proper in Suffolk County because at least one party hereto maintains its Massachusetts location and/or registered agent in Suffolk County.

12.    This Court has personal jurisdiction over Aetna because Aetna is engaged in substantial business activity within the Commonwealth of Massachusetts and Suffolk County, and is registered to do business in the Commonwealth.

13.    For avoidance of doubt, the claims for recovery of underpayments for emergency medical services in this lawsuit are for approved and covered services rendered to Aetna's members and do not require any coverage determinations under the Aetna members' plans. Each of the claims herein is supported by a legal duty arising under Massachusetts law. Plaintiff is not bringing any claim as a plan participant, plan sponsor, plan fiduciary, or beneficiary under any plan governed by Employee Retirement Income Security Act of 1974 (ERISA) or related regulations. Plaintiff does not stand in the shoes of any Aetna members for the purposes of this lawsuit.

14.    For further avoidance of doubt, this action also does not include any claim for benefits under any Aetna health plan pursuant to an assignment of benefits from any patient or upon any rights that any Aetna members may have to pursue against Aetna. All claims in dispute are claims for covered emergency services for which Aetna underpaid the ER Group under Massachusetts law. None of these claims were wholly denied payment and, therefore, Aetna has conceded that all claims in dispute meet the criteria for medical necessity and are "covered services." Plaintiff simply seeks to compel Aetna to compensate it for past underpayments.

## Facts

### *The Out-of-Network Emergency Services Provided to Aetna Members*

15.    At relevant times, the ER Group contracted with the Hospital to staff the Hospital's

4

emergency department with physicians and other clinical providers. The ER Group coordinated the billing of its contracted healthcare providers for emergency medical services.

16. Healthcare providers such as ER Group's contracted providers are generally classified as either "in-network" providers who have negotiated rates with a health insurance company such as Aetna, or "out-of-network" providers who submit billed charges at their usual and customary rates and are paid pursuant to applicable provisions in the Aetna members' health insurance plans and applicable laws.

17. The ER Group did not have a contract for negotiated rates with Aetna, and its healthcare providers are therefore "out-of-network" providers with respect to Aetna for the emergency medical services at issue.

18. During the relevant time period, the ER Group's contracted healthcare providers have delivered emergency medical services to thousands of Aetna members at the Hospital.

19. The emergency medical services were mandatory under governing law and rendered to meet such legal requirements as related to the conditions for which each of the Aetna members presented at the Hospital.

20. The ER Group was required under applicable law to provide emergency medical services to the Aetna members regardless of whether those patients had insurance under a health plan for which any given provider was an in-network provider or an out-of-network provider.

21. Conversely, under applicable law, including Mass. Gen. Laws c. 175, § 47U, Aetna, like all other health insurers, was required to provide coverage for emergency medical services, despite the ER Group's healthcare providers' out-of-network status with Aetna.

22. By approving payment, albeit in an inadequate amount, for the emergency medical services provided to Aetna Members by the ER Group's contracted providers, Aetna has

5

acknowledged and admitted that those emergency services are required and covered services involving a medical emergency.

***Aetna's Illegal Claims Underpayments***

23.     Under Massachusetts law, Aetna is required to reimburse the ER Group for the emergency medical services provided by those ER Group's contracted physicians and other clinicians at reasonable and fair amounts charged for the cost of emergency medical services even when providers are not normally affiliated with the health insurance plan.

24.     Rather than pay the reasonable fair market value for the emergency medical services at issue, as reflected in the bills submitted to Aetna by the ER Group, Aetna has unilaterally lowered the reimbursement rate allowed for "out-of-network" emergency services care to levels far below what Massachusetts law requires.

25.     Aetna has paid most of the claims submitted by the ER Group at a net payment rate that is significantly less than what the ER Group is entitled to receive under Massachusetts common law and Mass. Gen L. c. 176G, § 5(f).

26.     A detailed list of claims underlying this lawsuit is incorporated by reference herein and will be provided to the Defendant upon the entry of an appropriate HIPAA qualified confidentiality order.

**COUNT I**
**(Unjust Enrichment/Quantum Meruit)**

27.     Plaintiff hereby repeats, realleges, and incorporates by reference in this Count each and every allegation contained above.

28.     The ER Group has rendered valuable and necessary emergency medical services to Aetna members. In rendering such services, the ER Group conferred a direct benefit on Aetna by providing valuable, covered, and medically necessary emergency medical services to Aetna

6

members, including, without limitation, satisfying Aetna's legal obligations to provide emergency medical services to the Aetna members; by providing emergency medical services as to which Aetna is obligated to provide coverage to Aetna members and make reasonable payment under Massachusetts law; and by providing the Aetna members with emergency medical services to which the Aetna members were legally entitled, which the ER Group could not refuse under applicable law, and for which Aetna was required to reimburse the ER Group at reasonable and fair market value.

29. At all relevant times, Aetna had knowledge that ER Group's clinical providers were legally required to provide and did provide covered emergency medical services to the Aetna members as set forth above, and knowingly and voluntarily accepted those services, including by paying for them, albeit inadequately.

30. At relevant times, Aetna expressly directed its members to seek services from the ER Group in case of an emergency regardless of clinicians' network participation status.

31. The ER Group billed Aetna for the emergency medical services provided to Aetna members. Aetna has accepted and retained the benefit conferred on Aetna (less the inadequate partial payment made) by withholding for itself substantial reimbursement amounts that Aetna owed to the ER Group, instead making grossly inadequate payments to the ER Group for the covered emergency medical services at issue.

32. It would inequitable and unjust for Aetna not to pay the ER Group for the full reasonable fair market value of emergency medical services provided to Aetna members and yet to retain the benefit conferred on Aetna, as described above. Public policy and Massachusetts law favor and require access to emergency medical care and fair reimbursement to encourage medical professionals to participate in that field, which requires fair and reasonable compensation.

33. As a direct and proximate result of Aetna's conduct as set out above, Aetna has been unjustly enriched by, and the ER Group has been damaged by, and Plaintiff is entitled to recover, the amount of the difference between the fair and reasonable value of emergency medical services at issue and the amount actually paid by Aetna.

## COUNT II
### (Breach of Implied-in-Law Contract)

34. Plaintiffs hereby repeat, reallege, and incorporate by reference in this Count each and every allegation contained above.

35. The ER Group's clinicians provided valuable and necessary emergency medical services to Aetna's members.

36. The ER Group had no choice under the law but to provide these necessary emergency medical services to Aetna's members.

37. The ER Group charged reasonable amounts for the provision of those emergency medical services.

38. Aetna is required, under Massachusetts law, to pay the amounts reasonably charged for the provision of these services.

39. Under these circumstances, for reasons of justice, a contract between Aetna and the ER Group, obligating Aetna to pay the reasonable charges for the emergency medical services rendered to Aetna members, is imposed by law.

40. By its conduct set forth above, including its failure to pay reasonable charges for the emergency medical services rendered to Aetna members, Aetna has breached, and continues to breach, its implied-in-law contracts with the ER Group.

41. As a direct and proximate result of Aetna's breach, Plaintiff has suffered damages in an amount to be determined at trial.

8

## COUNT III
### (Violation of Mass. Gen. Laws c. 176G, § 5(f))

42. Plaintiffs hereby repeat, reallege, and incorporate by reference in this Count each and every allegation contained above.

43. The ER Group's clinicians provided valuable and necessary emergency medical services to Aetna's members.

44. The ER Group's clinicians were not participating with Aetna at the time such services were rendered.

45. Pursuant to Mass. Gen. Laws c. 176G, § 5(f), Aetna, as a health maintenance organization, "shall provide for or arrange for indemnity payments to a member or provider for a reasonable amount charged for the cost of emergency medical services by a provider who is not normally affiliated with the health maintenance organization when the member requires services for an emergency medical condition."

46. Aetna has a duty under Mass. Gen. Laws c. 176G, § 5(f) to pay the reasonable amount charged by Plaintiffs and the Class Members for emergency medical services rendered to its members.

47. The ER Group billed Aetna reasonable charges for the emergency medical services its clinicians provided to Aetna members.

48. Aetna has reimbursed the ER Group for the emergency medical services in an amount substantially less than the reasonable amounts charged by the ER Group.

49. Aetna's conduct is in violation of Mass. Gen. Laws c. 176G, § 5(f).

50. As a direct and proximate result of Aetna's violation of c. 176G, § 5(f), the ER

Group and Plaintiff suffered damages in an amount to be determined at trial.

## COUNT IV
### (Violation of Mass. Gen. Laws c. 93A)

51.     Plaintiffs hereby repeat, reallege, and incorporate by reference in this Count each and every allegation contained above.

52.     Mass. Gen. Laws Chapter 93A is applicable to all of the fully insured commercial plans at issue in this litigation.

53.     Aetna is and has been at all relevant times engaged in the conduct of trade or commerce in Massachusetts in its relations with the ER Group.

54.     Aetna, by its conduct set forth above, has engaged in unfair and deceptive acts and practices, which have directly and proximately caused the ER Groups to suffer damages, including among other things, knowingly and willfully violate Mass. Gen. Laws c. 176G, § 5(f) by refusing to pay the reasonable charges of the ER Group for emergency medical services rendered to Aetna members.

55.     Aetna's unfair and deceptive acts and practices, and the harm resulting therefrom, occurred primarily and substantially within the Commonwealth of Massachusetts.

56.     As a direct and proximate result of Aetna's unfair and deceptive conduct, ER Group has suffered damages, including a loss of money and/or property, in an amount to be determined at trial.

57.     Aetna's unfair and deceptive conduct has been willful and knowing, and ER Group and Plaintiff are entitled to attorneys' fees and multiple damages as provided for in c. 93A.

**PLAINTIFF DEMANDS A TRIAL BY JURY
ON ALL MATTERS SO TRIABLE**

Dated: December 29, 2025

Respectfully submitted,

HEALTHCARE JUSTICE COALITION, LLC

By its attorneys,

/s/ Phillip Rakhunov
Phillip Rakhunov (BBO #663746)
John N. Yokow (BBO #694372)
POLLACK SOLOMON DUFFY LLP
31 St. James Ave., Suite 830
Boston, MA 02116
(617) 439-9800
prakhunov@psdfirm.com
jyokow@psdfirm.com

11